**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-21443-BLOOM**

LUIS MIGUEL GARCIA RIVERO,

      Petitioner,

v.

GARRETT J. RIPA, Field Office Director of
Enforcement and Removal Operations,
Miami Field Office, Immigration and
Customs Enforcement; CHARLES PARRA,
Assistant Field Office Director of
Enforcement and Removal Operations,
Miami Field Office, Immigration
and Customs Enforcement KRISTI NOEM,
Secretary, U.S. Department of Homeland
Security; U.S. DEPARTMENT OF
HOMELAND SECURITY; PAMELA BONDI,
U.S. Attorney General; EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW;
WARDEN, Krome North SPC Center,

      Respondents.

_____/

## ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS*

**THIS CAUSE** is before the Court upon Luis Miguel Garcia Rivero's ("Petitioner")

Petition for Writ of Habeas Corpus ("Petition"), ECF No. [1]. Respondents filed a Response in

Opposition ("Response"), ECF No. [5].  Petitioner filed a Reply in Support ("Reply"), ECF No.

[6]. The Court has reviewed the Petition, the supporting and opposing submissions, the record, and

is otherwise fully advised. For the reasons that follow, the Petition is granted.

### I.    BACKGROUND

The Petitioner entered the United States without inspection on May 31, 2020, and was not

apprehended upon arrival. ECF No. [1] ¶ 5. Petitioner was apprehended in the Broward County

Jail on October 6, 2025, after he was arrested for aggravated assault with a deadly weapon. ECF Nos. [5-4] ¶¶ 20-21, [5-11]. Petitioner is currently detained at the Krome North SPC Center. ECF No. [1] ¶ 5. The Department of Homeland Security ("DHS") placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a and charged Petitioner as being inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as someone who was not in possession of valid documentation. *See* ECF No. [5] at 2-3.[1] Petitioner is currently held without bond. Petitioner's request for custody redetermination was denied by the Immigration Judge due to lack of jurisdiction. ECF No. [5-14].

Petitioner filed the instant Petition asserting his detention is unlawful because he is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Noem*, No. 5:25-cv-01873, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). ECF No. [1] ¶¶ 1-10. Petitioner requests release or, alternatively, a bond hearing under 8 U.S.C. § 1226(a). *Id.* ¶ 11.

Respondents argue that Petitioner is an applicant for admission subject to detention pursuant to § 1225(b)(2)(A) and that § 1226(a) is inapplicable. ECF No. [5] at 6. Respondents further argue that Petitioner failed to exhaust his administrative remedies and 8 U.S.C. § 1252(g) bars this Court's jurisdiction. *Id.* at 14-15. Finally, Respondents argue that the decision in *Bautista* is neither binding, preclusive, nor applicable to Petitioner. *Id.* at 21.

## II.   LEGAL STANDARD

### A.   Jurisdiction

Pursuant to 28 U.S.C. § 2241(a), district courts have the authority to grant writs of habeas corpus. Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who

---

[1] Petitioner states he was charged as being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection. ECF No. [1] ¶ 6. However, the Notice to Appear confirms Petitioner was charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *See* ECF No. [5-1].

demonstrates that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3). The Court's jurisdiction extends to challenges involving immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

### A.  Administrative Exhaustion

Respondents argue the Petition should be dismissed because Petitioner has failed to exhaust available administrative remedies. ECF No. [5] at 14. Respondents contend that the Board of Immigration Appeals ("BIA") is the appropriate forum to resolve legal issues surrounding detention authority under §§ 1225 and 1226. *Id.*

The exhaustion requirement under 8 U.S.C. § 1252(d)(1) "is not jurisdictional," but rather prudential. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023) (acknowledging the abrogation of prior Eleventh Circuit precedent interpreting § 1252(d)(1) as a jurisdictional bar by *Santos-Zacaria v. Garland*, 598 U.S. 411, 413 (2023)). As a result, administrative "exhaustion is not required where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile." *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citing *Von Hoffberg v. Alexander*, 615 F.2d 633, 638 (5th Cir. 1980)).

Any request for a bond hearing would have been futile given the Board of Immigration Appeals' ("BIA") recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025). ECF No. [9] at 9. In *Yajure Hurtado*, the BIA squarely concluded that "aliens who are present in the United States without admission are applicable for admission under . . . 8 U.S.C. § 1225(b)(2)(A) and must be detained for the duration of their removal proceedings." 29 I&N Dec. at 220. In effect, the BIA determined that 8 U.S.C. § 1225(b)(2) applies to foreign nationals like Petitioner, and under 8 U.S.C. § 1225(b)(2), no bond hearings are to be provided. Because immigration judges are bound by BIA precedent, any request for a bond hearing would serve no

3

purpose. *See e.g., Hernandez Alvarez v. Morris*, 25-24806 (S.D. Fla. Oct. 27, 2025), ECF No. [6] at 3–4 ("[T]he Court agrees with Petitioner and the growing number of courts that have concluded that since the result of any 'bond appeal to the BIA is nearly a foregone conclusion under [Yajure Hurtado], any prudential exhaustion requirements are excused for futility." (citing *Puga v. Assistant Field Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025))); *Puga*, 2025 WL 2938369, at *3–6 ("Since the result of Petitioner's custody redetermination and any subsequent bond appeal to the BIA is nearly a foregone conclusion under *Matter of Yajure Hurtado*, any prudential exhaustion requirements are excused for futility."); *Mosqueda v. Noem*, 2025 WL 2591530, at *7 (C.D. Cal. Sep. 8, 2025) (waiving exhaustion as "the most recent BIA decision on [whether § 1225 or § 1226 applies] has adopted the legal interpretation of the new DHS policy that petitioners challenge."). The Court therefore excuses exhaustion and now addresses the immigration statutes at issue here.

## B. Relevant Immigration Statutes

As relevant here, two statutes govern the detention of foreign nationals: 8 U.S.C. §§ 1225 and 1226.

### i.   8 U.S.C. § 1225

Section 1225 governs the inspection, detention, and removal of so-called "applicants for admission." See 8 U.S.C. § 1225 et seq. Pursuant to the statute, applicants for admission are defined as foreign nationals "present in the United States who ha[ve] not been admitted" or those "arriv[ing] in the United States." Id. All applicants for admission "must be inspected by immigration officers to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). To that end, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." Id. at 289 (emphasis added).

In distinguishing 8 U.S.C. §§ 1225(b)(1) and (b)(2), the Court begins by noting that "Section 1225(b)(1) applies to all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." Id. Such foreign nationals are generally subject to expedited removal "without further hearing or review." 8 U.S.C. § 1225(b)(1). That said, if the foreign national expresses "an intention to apply for asylum" or a fear of persecution," the statute requires referral to an interview with an immigration officer. Id. at § 1225(b)(1)(A)(ii). If the immigration officer finds a "credible fear," the foreign national "shall be detained for further consideration of the application for asylum." Id.

By contrast, "Section 1225(b)(2) is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Foreign nationals covered under § 1225(b)(2) are detained for removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A). Importantly, detention under § 1225(b)(2) is mandatory. *See Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025).

### ii. 8 U.S.C. § 1226

The other relevant immigration statute, 8 U.S.C. § 1226, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added). Section 1226(a) provides that when a foreign national has been "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General may either continue to detain the individual or release them on bond or conditional release. See 8 U.S.C. § 1226(a). The statute thus "establishes a discretionary detention framework." *Gomes*, 2025 WL 1869299, at *2. With this basic framework now

established, the Court turns to analyzing the core dispute of this case—which statute applies to Petitioner.

### iii. Whether § 1225 or § 1226 Applies

Petitioner argues that 8 U.S.C. § 1226, pursuant to which he would have been provided with a bond hearing, should have been applied to him. ECF No. [1] ¶ 31. Respondents, in their Response, argue that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A). *See generally* ECF No. [5]. Specifically, Respondents argue that § 1225(b)(2)'s definition of "applicants for admission" is broad enough to encompass not just those arriving at a port of entry, but those who, like Petitioner, have been residing in the United States. *Id.* at 11. The Court agrees with Petitioner.

As an initial matter, the Court notes that the issue of statutory interpretation falls well within the Court's jurisdiction. *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025) (holding that determining whether § 1226(a) or § 1225(b)(2)(A) applies implicates statutory interpretation, and "matters of statutory interpretation belong historically within the province of the courts." (citing *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024))); *Barrios v. Shepley*, No. 25-cv-00406, 2025 WL 2772579, at *5 (D. Me. Sept. 25, 2025) (district court had jurisdiction to review petitioner's challenge to the "statutory framework" regarding his detention); *see Gomes*, 2025 WL 1869299, at *8 n.9 ("[T]o the extent . . . the BIA would conclude that Gomes is subject to mandatory detention under Section 1225(b)(2), this Court respectfully disagrees with that conclusion. Courts must exercise independent judgment in determining the meaning of statutory provisions"); *Mosqueda*, 2025 WL 2591530, at *7 (district court had jurisdiction to decide whether § 1225 or § 1226 applied as "[t]hese are purely legal questions of statutory interpretation.").

The Supreme Court has treated foreign nationals who, like Petitioner, are already in the United States as being governed by § 1226(a). In *Jennings*, the Supreme Court distinguished foreign

nationals "who have arrived at an official 'port of entry' (e.g., an international airport or border crossing) or who have been apprehended trying to enter the country at an unauthorized location" from those foreign nationals "who are already present inside the country." *Jennings*, 583 U.S. at 285. Indeed, the Court expressly held that § 1225(b) "applies primarily to [foreign nationals] seeking entry into the United States," *id.* at 297, whereas § 1226 "applies to [foreign nationals] already present in the United States," *id.*, at 303; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (distinguishing foreign nationals "who have come to our shores seeking admission" from "those who are within the United States after an entry, irrespective of its legality.").

The BIA's decision in *Yajure Hurtado* does not change this conclusion. For one, the BIA's conclusion is "entitled to little deference," *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228 JLT SAB, 2025 WL 2879514, at *7 (E.D. Cal. Oct. 9, 2025), because "courts must exercise independent judgment in determining the meaning of statutory provisions" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 394, 413; *Gomes*, 2025 WL 1869299, at *8 n.9. Indeed, in the words of the Supreme Court, "agencies have no special competence in resolving statutory ambiguities;" instead, "[c]ourts do." *Loper Bright*, 603 U.S. at 400–01.

Moreover, the reasoning and ultimate decision in *Yajure Hurtado* are unpersuasive and not binding on this Court. The BIA's view has not "remained consistent over time," *Loper Bright*, 603 U.S. at 386, given that the *Yajure Hurtado* decision contradicts "three recent, albeit unpublished, decisions by the [BIA], all clearly holding that the detention of a non-citizen arrested within the United States is governed under [S]ection 1226, rather than [S]ection 1225." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 222 (D. Mass. 2025); *see also Ortiz Donis*, 2025 WL 2879514, at *7; *J.U. v. Maldonado*, No. 25-CV-04836 (OEM), 2025 WL 2772765, at *7 (E.D.N.Y. Sept. 29, 2025).

Moreover, the BIA's decision in *Yajure Hurtado* "conflicts with the implementing regulation for § 1225(b)" by espousing a more expansive interpretation of § 1225(b) than the regulation itself does. *Ortiz Donis*, 2025 WL 2879514, at *8. Finally, many district courts have rejected the BIA's expansive interpretation of Section 1225(b) set forth in *Yajure Hurtado*, holding that the interpretation Respondents have put forward "directly contravenes the statute, disregards decades of settled precedent," and is erroneous. *Gil-Paulino v. Sec'y of the U.S. Dep't of Homeland Sec.*, 25-cv-24292 (S.D. Fla. Oct. 10, 2025). The Court cites to a small sample of those cases in a footnote.[2]

The Court determines that Petitioner's proposed construction of §§ 1225 and 1226 gives meaning to each provision of the statutes, whereas Respondents' proposed construction does not. There are three canons of statutory construction relevant here. First, as the Supreme Court has made clear, "[a] statute should be construed so that effect is given to all its provisions." *Corley v. United States*, 556 U.S. 303, 314 (2009). Second, courts are to construe each word in a statute under the premise that it was intended to have "particular, nonsuperfluous meaning." *Bailey v.*

---

[2] *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sep. 9, 2025); *Puga*, 2025 WL 2938369, at *3–6; *Merino v. Ripa*, No. 25-cv-23845, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025); *Lopez v. Hardin*, No. 25-cv830, 2025 WL 2732717, at *2 (M.D. Fla. Sep. 25, 2025); *Patel v. Crowley*, No. 25-cv-11180, 2025 WL 2996787, at *7 (N.D. Ill. Oct. 24, 2025); *Gonzalez v. Noem*, No. 0:25-CV-62261, 2025 WL 4053421, at *4 (S.D. Fla. Dec. 23, 2025), *report and recommendation adopted*, No. 25-62261-CV, 2026 WL 115211 (S.D. Fla. Jan. 15, 2026); *Sanchez v. Noem*, No. 25-62677-CV, 2026 WL 222556, at *1 (S.D. Fla. Jan. 28, 2026); *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 784 (E.D. Mich. 2025); *Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025); *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *4–5 (S.D. Cal. Oct. 24, 2025); *Carmona v. Noem*, No. 1:25-CV-1131, 2025 WL 2992222, at *4–6 (W.D. Mich. Oct. 24, 2025); *Arias Lopez v. Hyde*, No. CV 25-12680-NMG, 2025 WL 3197806, at *1–2 (D. Mass. Oct. 24, 2025); *Aguilar Guerra v. Joyce*, No. 2:25-CV-00534-SDN, 2025 WL 2999042, at *1–3 (D. Me. Oct. 24, 2025); *Lomeu v. Soto*, No. 25CV16589 (EP), 2025 WL 2981296, at *4–9 (D.N.J. Oct. 23, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, at *4–5 (D.N.J. Oct. 23, 2025); *Loa Caballero v. Baltazar*, No. 25-cv-03120, 2025 WL 2977650, at *5–6 (D. Colo. Oct. 22, 2025); *Garcia v. Noem*, No. 2:25-CV-00879-SPC-NPM, 2025 WL 3041895, at *3–5 (M.D. Fla. Oct. 31, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

*United States*, 516 U.S. 137, 146 (1995); *see also Bilski v. Kappas*, 561 U.S. 593, 607–08 (2010) (Courts may not interpret "any statutory provision in a manner that would render another provision superfluous."); *In re Shek*, 947 F.3d 770, 778 (11th Cir. 2020) ("[T]he Supreme Court has instructed us that the surplusage canon does not only apply when a potential interpretation would leave a statutory provision with no role; it also applies when an interpretation would render a 'clause, sentence, or word . . . superfluous, void, or *insignificant*.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)) (emphasis in original)). And third, "[e]ach word within the statute must be given 'it[s] ordinary, contemporary, common meaning, while keeping in mind that statutory language has meaning only in context.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 780 (E.D. Mich. 2025) (quoting *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022)).

Applying these canons of statutory construction, it becomes clear that only Petitioner's proposed construction can stand, while Respondents' understanding cannot. There are two primary reasons for this conclusion.

First, Respondents' proposed construction would render portions of § 1225(b)(2)(A) superfluous and without natural meaning. By its plain terms, for § 1225(b)(2)(A) to apply to Petitioner, an "examining immigration officer" must determine that he is: (1) an "applicant for admission;" (2) "seeking admission;" and (3) "not clearly and beyond a doubt entitled to be admitted." *Martinez*, 792 F. Supp. 3d at 214.

Respondents' understanding would make "applicants for admission" and "seeking admission" effectively "synonymous." *Ortiz Donis*, 2025 WL 2879514, at *8. This, as many courts have observed, would render the phrase "seeking admission" superfluous. *See, e.g., id.*; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025); *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, 2025 WL 2935630, at *9 (N.D. Cal. Oct. 15, 2025). Equally

significant, Respondents' reading would require the Court to interpret "seeking admission" unnaturally by ignoring that the phrase "necessarily implies some sort of present-tense action."

*Martinez*, 792 F. Supp. 3d at 218. As the *Lopez-Campos* court made clear:

> Respondents completely ignore the term "seeking" when attempting to broaden what "seeking admission" means. This implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection. Noncitizens who are just "present" in the country—those like Lopez-Campos, who have been here for years upon years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not "seeking" admission. True, they may technically be "a noncitizen present in the United States who has not been admitted" to make them an "applicant for admission" but these are not interchangeable. The statute also requires that an "examining immigration officer" determine that the noncitizen is "seeking admission." That was not and could not have been done under the facts and circumstances of this case.

*Lopez-Campos*, 797 F. Supp. 3d at 781.

Second, Respondents' proposed construction of § 1225(b)(2)(A) would also make certain parts of § 1226 superfluous. As a reminder, § 1226(a) allows foreign nationals to be released on bond pending a removal decision. But § 1226(c) requires the Attorney General to take certain categories of foreign nationals into custody pending a removal determination. And in passing the 2025 Laken Riley Act, Congress amended § 1226(c) to add an *additional* category of foreign national subject to mandatory detention under it. *See* 8 U.S.C. § 1226(c)(1)(E); *Ortiz Donis*, 2025 WL 2879514, at *9. If Respondents are correct that § 1225(b)(2)(A) requires detention of effectively all foreign nationals present in the United States, then § 1226(c)—including the Laken Riley Act—would be superfluous. As such, there would be no need to create a mandatory detention provision in § 1226, because *all* foreign nationals would already be mandatorily detained under § 1225(b)(2)(A). *Martinez*, 792 F. Supp. 3d at 221; *Ortiz Donis*, 2025 WL 2879514, at *9–10. Moreover, Respondents' reading of § 1225(b)(2)(A) would effectively nullify § 1226(a) because it is unclear *when* the discretionary detention provided for by § 1226(a) would apply. *Patel*, 2025 WL 2996787,

at *8. It is unlikely that Congress enacted the Laken Riley Act with the intention that it would have no effect because § 1225(b)(2)(A) already encompassed *all* foreign nationals and subjected them to mandatory detention. *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

At bottom, the Court agrees with Petitioner and rejects Respondents' proposed interpretation. The Court finds that Petitioner is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. Furthermore, the Court finds that Petitioner is detained pursuant to the authority of 8 U.S.C. § 1226(a) and is entitled to a bond hearing. Because the Court concludes Petitioner is entitled to a bond hearing under § 1226(a) based on statutory interpretation, the Court does not address the parties' arguments regarding the *Maldonado Bautista* Bond Class.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Petitioner's Petition for Writ of Habeas Corpus, **ECF No. [1]**, is **GRANTED**.

2.   Within seven (7) days of the date of this Order, Respondents must either: (1) provide Petitioner with a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying his continued detention by clear and convincing evidence of dangerous or risk of flight; or (2) release Petitioner from custody under reasonable conditions of supervision.

3.   Respondents are enjoined from denying bond to Petitioner on the basis that he is detained pursuant to 8 U.S.C. § 1225(b)(2).

4.   Respondents must, within 24 hours of the bond hearing, file a status report indicating the outcome of the bond hearing and, if release on bond is denied, the reason(s) for the denial.

5.   The Clerk of Court shall **CLOSE** this case.

Case No. 26-cv-21443-BLOOM

6. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all

pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 1, 2026.

 

 

 

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

12